Ophelia Calderon, Co-Counsel, Anna Murakhman, Petitioner Marina Hernandez to present her argument that Ms. Hernandez is in fact eligible for cancellation of removal. This is an immigration case. This is about the Immigration and Nationality Act. Ms. Hernandez is an applicant for a special type of relief called cancellation of removal under the Immigration and Nationality Act. The crux of this case is about the plain meaning of this statute. The statute is at INA Section 240 AB. And this statute states that the Attorney General may cancel the removal of and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien, then it lists the requirements, if the alien has been physically present in the United States for a continuous period of not date of such application. Ms. Hernandez entered the United States without inspection in 1997 and has never departed the United States. Her physical presence of 10 years, continuous physical presence is not in dispute. B has been a person of good moral character during such period. This is also not in dispute. C has not been convicted of an offense under Section 212A2, 237A2, or 237A3 of this title. Subject to Paragraph 5. And D establishes that removal would result in exceptional and extremely unusual hardship to the alien spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. Today's case is about 240AB1C, the requirement that Ms. Hernandez has not been convicted of an offense under Section 212A2, 237A2, or 237A3. For purposes of today, just off the bat, 237A3 is not a dispute here, which deals with document or visa fraud. The question is whether she is inadmissible under 212A2 or deportable under 237A2. Ms. Hernandez was never admitted to the United States. Therefore, she can never have been convicted of an offense under 237A2. So Ms. Hernandez's position is that yes, she was not admitted, and she is in fact inadmissible under 212A2. Let me just ask you, I noticed the way you've argued it, you've sort of suggested that C requires she be either inadmissible under one section or deportable under a section. But yet the language of the statute says, has not been convicted of an offense under A, B, or C. So you would agree that that's, just read alone, would mean that she cannot have been convicted of offense under any one of those three statutes? Well, this is a... Just reading that language. It's in the disjunctive, right? It is in the disjunctive. All right. Now, when you take that language and say convicted of an offense, it doesn't say a person who is either inadmissible or deportable. The offenses are listed as crimes of moral turpitude. I'm now looking under 1227A2. And there, it sets forth what a crime of moral turpitude is. And then it concludes, is a person who commits that crime is deportable.  Is deportable is the consequence. So if you're going to try to find what the offense is under 1182A2, no, it's 1227A2, excuse me. Then you're going to have to just look at the offense and find out whether she was convicted of an offense described in 1227A2. You don't look, I don't think, when you're describing an offense as to whether she was And your argument is that deportability is a requirement of that offense. And it's really not. It's a consequence of that offense. Well, I'm arguing two things. I mean, Ms. Hernandez is arguing, thank you, Judge Niemeyer, the petitioner is arguing two things with respect to the plate language of this statute. I mean, the statute is as a whole, this is not a criminal statute. This is an immigration statute. And the terms offense appear quite frequently and relate to questions of inadmissibility and deportability. In the case of the cancellation statute, they appear not once, but twice. Except in that statute, it doesn't help you very much. Because in that statute, there are a couple of other references of the offense, and then they qualify it to the extent that it renders you deportable or inadmissible. But here, it doesn't say that. Well, I think that you're referring to the stop time rules. And Ms. Hernandez's position on that would be that that use of the word renders deals with the temporal limitation, actually. And I would also note that with respect to how it's phrased under 237A2, it also states that how it is defined is as a crime involving moral turpitude which occurs within five years of your admission. So that is an essential part of the statute of 237A2. We don't have that before us. We have the question of whether C, the statute you're talking about, here it says has not been convicted of an offense under, you would like to say is not inadmissible or deportable under. And then have the fact that since she's not inadmissible, she was never admitted. Well, with all due respect, I think that statute actually is before us today because that statute is listed and it has to be read together. I mean, that's part of the, it's part of the immigration statute. In particular, it's part of this statute. It is listed specifically in this statute. Any offense under, it's the offense under 237A2, which is a crime involving a moral turpitude. What is the offense under? In this particular case? No, the offense, it basically says a crime of moral turpitude.  And it describes one and two. And describes that offense. 237A2, which is a crime involving moral turpitude, which occurs within five years of admission. So the very section of the statute, this statute refers to another statute. And that section, 237A2, specifically says an offense under, a crime involving moral turpitude, which occurs within five years of admission. We don't, the court, the Board of Immigration Appeals doesn't get to cherry pick which parts of the statute it wants to use. If we're going to read the statute in its entirety. She hasn't been admitted, so she doesn't get the benefit of the five years. No, well, not at all. In fact, but she has, she has not been admitted, and her offense qualifies as a petty offense exception under 212A2, which has also been stipulated, and the, and Congress allowed for that. And you're going to ignore 1227A2. In other words, 1227A2 is in the disjunctive, and it says any offense under 1222A2. This makes her, disqualifies her. I don't believe that we would be ignoring that statute. It's that we would be ignoring, we would be applying that part of the statute to the, may I just finish my statement? Of course. I see that my time is up. We would be applying that section of the statute to the individuals that Congress intended to apply it to. Those individuals who are deportable to the United, deportable from the United States because they were admitted. As opposed to Ms. Hernandez, who is inadmissible to the United States, and also removable, but inadmissible to the United States because she was not admitted. Thank you for your time. I believe we have one other argument on behalf of the petitioner. We do. Microphone. Okay. Good morning, Your Honors. Good morning. May it please the Court. My name is Ana Mermon, and I represent the petitioner, Ms. Hernandez, along with Ms. Calderon. To speak to Judge Niemeyer's question about, we just need to look at the offense here, and it says offense under 212A2 of the INA, or 237A2 in relevant part today. The offense under 1227A2 requires admission as part of the offense. So even in adopting and incorporating ... Why did you say that? Because to be, to fall under the offense in 212A2, the crime involving moral turpitude must have happened within five years after the date of admission. That's not a requirement. That's in case she's been admitted, it would have to be brought within five years after. The conviction must have occurred within five years of admission. If you have a conviction for a crime involving moral turpitude beyond five years, then you're not covered within that offense. But the time hadn't even started running in this case because she's not been admitted. Right. But I don't understand why that isn't an offense. The offense is a crime of moral turpitude. It doesn't say under C, B1C, it doesn't say who has been rendered deportable or inadmissible under so-and-so. It says who has not been convicted of an offense under A, B, or C. Correct. And you then look to the offenses under A, B, or C to see what offenses are contained there. And the offense contained there is a crime of moral turpitude as defined in 1227A2. That's correct, Your Honor. However, the Board of Immigration Appeals itself has found in two or three material cases that I can cite for you in a moment, that in looking to whether an offense is under 240A, B, 1C, it incorporates the entire offense. The offense for what purposes? It seems to me there's a case that's directly contrary to you on this case, isn't it? The BIA is taking the position contrary to your position in this case. Well, in matter of Cortez, in matter of Almanza-Arenas, which is at issue today, we are arguing that these cases are against the plain meaning of the statute and that they're impermissible constructions of the statute. However, looking at other BIA case decisions, namely matter of Gonzales-Silva, matter of Garcia-Hernandez. How can we look at those if we have BIA decisions directly applicable? Well, the BIA decision at issue today is not correctly applicable. It does contravene the plain language of the statute. Well, that's your only argument, isn't it? In other words, if it's ambiguous, we would defer under Chevron unless it's unreasonable, right? Well, our primary argument is that this is not an ambiguous statute, that the plain meaning is clear and Congress has says what it means and means what it says, and that to be deported, in order to be eligible for cancellation of removal, one need not have been convicted of an offense under 212A2 or 237A2, relevant here. As to these board cases that have adopted the entirety, these have been in the same context for eligibility of cancellation of removal that the board has held that we must look at the description of the entire offense. Relevant here is, for example, in matter of Garcia-Hernandez, when we're looking at the petty offense exception, which is applicable to Ms. Hernandez here, that makes her not fall within 212A2. Okay. Well, in that same case, Your Honor, the board found that we need to look at the petty offense exception because that's part of the description in 212A2. So it had that broader incorporation of the entire ground of 212A2 and applied it to her eligibility. 1182, I'm using the U.S. code, which is easier for me because I have it here, but 1182A2 is one of the disjunctive references, offenses under, which means, and I was looking at 1227A2, which doesn't have the petty offense exception. Correct, Your Honor. And Congress has taken that into account in treating inadmissible people who have not been admitted to the United States and those who have been admitted to the United States. And Congress has chosen to give that exception to people who are not admitted to the United States, such as Ms. Hernandez. For people who have been admitted to the United States... Why is the statute used in offense then, instead of saying who would be inadmissible or deportable under and that Congress didn't include that aspect, basically it just asked for a list of offenses. Well, Your Honor... They could have listed them right there, I suppose. They could have listed it there, but they chose not to. And the words inadmissible and deportable do appear in the cancellation statute in the introductory text. As my co-counsel stated when she read the text, in finding that one is eligible, when the attorney in general decides whether to adjust the status of someone, they look at whether the person is inadmissible or deportable. So Congress did use those terms in that statute. Has any court of appeals read it the way you read it? I'm sorry, Your Honor? Has any court of appeals read it the way you read it? Well, Your Honor, there have been a couple circuits that have... Three circuits have addressed it. Two of them have directly against you and one found it ambiguous and deferred. Yes, Your Honor, that was, I believe, the Seventh Circuit, correct? That did find it ambiguous and in finding... First of all, that... But the Ninth Circuit found it unambiguous and found it contrary the way you read it. Yes, Your Honor. I would just... Do you think that that's unreasonable? I do disagree with both of those circuit decisions. You'd have to find it unreasonable, wouldn't you? Because we defer to the BIA if it's reasonable. I do, Your Honor. It's our primary argument that this is an unambiguous statute and looking to the plain meaning one must be admitted to the United States to be found deportable under 237A2 for an offense under... Has any court of appeals agreed with you that it's unambiguous and reads it the way you read it? No, Your Honor, but our exact case has not been before those court of appeals. They have considered different parts of the statute. For example, in the Seventh Circuit that Your Honor just named, that was dealing with the aggravated felony provision under 237A2 where there is no parallel position in 212A2. So it was a slightly different argument there. The Ninth Circuit. The Ninth Circuit had to do with domestic violence, which also fell under a different part of the statute. And there is no petty offense exception in 212A2. There is no domestic violence offense under 212A2. There's no problem with finding the petty offense. If you're under 1182, you get the petty offense exception. Correct, Your Honor. The issue here is whether you also fall under 1227A2. And if you fall under 1227A2, if the crimes listed in that section disqualify you, then the BIA is correct. If they don't, so you basically have to say C includes three references to three section offenses under A, B, or C. And then you have to say the ones under B don't apply. Yes, Your Honor. The board's position is unreasonable here. What they're doing is they're adding a word. They're adding the word described to support their judgment that people like Ms. Hernando should not be eligible for cancellation removal. But Congress has spoken to this issue. They have spoken clearly to this issue. And they have used the word under. The word described does appear in other parts of the statute, even within the cancellation statute itself when determining good moral character. It says described under, and it lists offenses, and it uses the word and. Congress didn't do that here. They said under. They chose not to use the word described. And they used the word or. Which means we have to look at these three statutes independently, and we have to look at the entire description of the offense. What the board is doing here is they're picking and choosing. They're using the word crime involving moral turpitude, but then they're ignoring the within the five years of admission in 237A2. Then they're deciding again to use the within one year that the crime must be punishable by one year in the second part of 237A2A1. So what they're doing is they're picking and choosing, they're cherry picking which language they want to include in describing the offense. I don't understand that. I'm looking here at the crime of moral turpitude, and it says the nature of the crime, and it says and is convicted a crime for which the sentence is one year or longer. So that's the description of the crime. It has to be one year or longer. That's correct, Your Honor. It is. And the board has held that that is part of this determination as to whether one falls under that provision. Your Honor, I see that I'm out of town, if I may finish my point. Is that the, they have, yes, my sentence is that they have decided to incorporate that second clause that you just stated, and yet they're ignoring the part in the middle. So they're applying one part, ignoring the within the five years after the date of admission, and then choosing to apply it again. And for this reason, it's arbitrary, it's capricious, and it's manifestly contrary to what Congress has plainly stated. Go ahead. Thank you, Your Honor. Thank you. Let's hear from the government. Good morning. My name is Monica Anton, appearing on behalf of the Attorney General of the United States. The parties do agree that the language in the statute is unambiguous. Of course, what we disagree about is its application. And I'd first like to point out that the phrase inadmissible or deportable at the beginning of the statute means that the cancellation applicant need not have been admitted to the United States to be eligible to apply. So that distinction is actually, that phrase actually removes any distinction tethered to admission. And it tells us that admission is not relevant to cancellation eligibility. And in fact, the petitioner's reading of the statute adds into the subparagraph C sentence the phrases inadmissible under 212A2 or deportable under 237A2 and A3. And that is an erroneous reading of the statute, as the Fifth and Ninth Circuits have held under the plain meaning. And furthermore, the criminal conviction, the Virginia statute of conviction does not require an admission. And the reference to the offenses in the cancellation statute is simply a reference to the criminal offenses listed in those three sections. In fact, there are over 35 offenses, separate offenses listed in those three sections. So it would have been rather unwieldy for Congress to include all of those offenses separately. So what it was doing in that section was using those three sections as a cross-reference, a shorthand for the disqualifying offenses for non-permanent resident applicant for cancellation. If Ms. Hernandez had properly responded to the inquiries of the agency initially, and had come forward and laid forth her case, would she be in the same situation as she is today? Oh, I actually don't know if the conviction would have disqualified her from TPS, even if she provided the documentation. That's something I'd have to research. Unfortunately, at this point, I don't know that she could reapply for TPS. I could. That's all right. Okay. What is TPS? TPS is Temporary Protected Status. It does... I have a related question. Sure. There seems to be evidence in the record that there was a negotiation about whether the government would exercise prosecutorial discretion. I guess, not pursuing this case, and negotiations or discussions about that seem to stretch over some years. What happened to that? My understanding, and actually, I had also separately had this conversation with Petitioner's Counsel, is that the petitioner wishes to pursue the petition for review, as is her prerogative. At this time, I can't give... I didn't understand what you said. I understood that the petitioner wants to... What was the rest of your sentence? Pursue the petition for review. She would like to go forward on the appeal and make her argument. If she wants to ask for discretion, she may go to DHS and ask about... She can do that if she does not prevail in the petition for review? She can. She can. In fact, we're still awaiting further guidance on implementation of the memos. I had asked about potentially moving to hold the case in abeyance until we receive further guidance. The memos don't apply to cases involving crimes, do they? There are some exceptions. It's not clear whether she would still be... We've had several cases put over on the basis of the memos. I don't know what they say, but they seem to be the subject of hearings in Congress right now. This conviction is eight years old, right? Well, yes. I just don't know if DHS would take into consideration the conviction or not and how it would come out on the issue of discretion. I just did assume that if she didn't pursue this business about discretion before pursuing her appellate rights, it was gone, but you're telling me, no, that's not true. No, it's not at all. The purpose of the discretionary initiatives is to avoid removal. So regardless of at what stage the removal order is issued or affirmed, she can still ask for discretion, even if the court denies the petition for review. And of course, it's the government's position that the plain language of the cancellation statute is a reference to these three other sections as a shorthand list of the disqualifying convictions. And if the court disagrees that it's plain language, then as the board stated in the alternative, then its interpretation in matter of Cortez is reasonable. And if the court has no further questions on the issue of the statutory interpretation, the government rests on the brief. Okay. Thank you. Thank you. Thank you again for having me again. I just wanted to sum up with a couple of brief points on Ms. Hernandez's case. As it relates to the statute itself and this court, this court has looked at other cases involving immigration, involving 237A2, one of the sections in question here today, and also other forms of relief, in particular in Bracamontes and Mendoza-Leyva and also in Aremu. In all of those cases, this court recognized that admission is essential, critical to applications for relief that are contained within the immigration and nationality statute. And what Ms. Hernandez is asking for today is that this court recognize that once again, that the immigration statute is not in a vacuum, or the section that we're talking about does not sit by itself. It has to be read in context with the entire statute, which is not criminal in nature. It is an immigration statute. And the language that is used in the immigration statute allows us to, or orders the agency that's administering it to look at her case as a whole. If we look at, I think when this court asked earlier about the other circuit courts, I would note that there seems to me, there seems to have been some reliance on the House Conference Report, which I'm at odds with. Because for me, the House Conference Report, there's a reference in the government's brief that the House Conference Report refers to a previous statute, which said renders or which says... Well, if I understand the government, it's basically relying on the straightforward language. I mean, I understand this has to be taken as a whole, but I suggest to you that the further you read this statute, you'll find that the distinctions made in the statute highlight the fact that this statute is applying to both persons inadmissible and deportable. And saying with respect to persons inadmissible and deportable, they may not get the relief of cancellation of removal if they've committed an offense under A, B, or C. It doesn't say whether they are admissible or deportable under A, B, or C. It says committed an offense. And that's just an incorporation of the offenses. And I don't know why that is an unreasonable interpretation of the statute. The argument you're making is that that's just unreasonable. And the only reason I relied to the other circuits is the Fifth and the Ninth have said that's unambiguous and didn't even get to reasonableness. And the Seventh Circuit said, well, there's some ambiguity and deferred to the BIA's decision, which gets to the same conclusion. Well, legally, it's an uphill battle. And the question is, you're asking us to create a split, number one. And number two, you're asking us to ignore who is admissible or deportable and the limitation of the incorporation to the offense, not just the whole statute, whether they qualify for deportability or inadmissibility, but to the offenses listed under those statutes. What wiggle room do we have? I mean, your client has a sympathetic case, I must say. She does. Yes, she has a sympathetic case. But, of course, she came into the country illegally and she did commit this small crime. Well, with all due respect, Your Honor, I mean, I still disagree about the plain language. I mean, the only way for us to follow the government's position or to say that the plain language excludes her is to add words and take off words. I mean, those words don't exist. It doesn't say described under. You're not looking just at the offense. You're looking at the offense to the extent it makes a person deportable. But those words exist in the statute. No, that's the consequence. It says a person who commits this offense is deportable or the person who commits this offense is inadmissible. Those are the, but the incorporation doesn't go to those consequences. It just goes to the qualifying crimes. Well, I would submit, just as my last point, since my time is up, that the statute does incorporate. They incorporate, that listing also incorporates the petty offense exception and it also incorporates the timing of the offense, which this reading, the government's reading, asks us to subtract from. No, it doesn't. It just says it's inapplicable. I mean, if an offense describes an element that's inapplicable, it seems to me that doesn't mean the offense is there asking you to ignore it and they haven't asked to ignore it. The person, a crime committed five years, within five years of admission, it's just not applicable. She was never admitted. Now, at some point in the future, she's admitted, but it would have to be five years, I suppose. Well, I understand what this Court is saying, what Your Honor is saying, but Congress has continuously and historically recognized that these words are important when determining relief and when determining who can remain in the United States and we can't ignore that because they've written that into the statute. But they wrote that for those statutes, 1227 involves deportation, 1182 involves admission, but this statute addresses cancellation of removal and it says it covers both persons who are inadmissible and deportable. It does, Your Honor. I agree. And it includes all of the provisions. Thank you very much for your time. Do you want to finish up? Sure. Suit you to finish. Sure. Okay. Thank you. We'll come down and greet counsel and then go into our last.
judges: William B. Traxler Jr., Paul V. Niemeyer, Diana Gribbon Motz